UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PETRA MINI MART, INC., | |
| Petitioner, | Case No. 16-cv-4573 |
| v. | |
| UNITED STATES OF AMERICA, | Judge John Robert Blakey |
| Respondent. | |

## MEMORANDUM OPINION AND ORDER

Petitioner Petra Mini Mart, Inc. ("Petra") initiated this action seeking review of a Final Agency Decision (the "Decision") entered by the United States Department of Agriculture, Food and Nutrition Service ("USDA"). Petra claims that the Decision was not supported by sufficient evidence. The United States of America, on behalf of the USDA, conversely insists that the Decision is valid, and has accordingly moved for summary judgment on Petra's claim. [12] at 1-2.[1] For the reasons explained below, that motion is granted.

---

[1] The government also originally brought a counterclaim against both Petra and its first owner, Ayman Salaymeh ("Salaymeh"), seeking payment of the civil monetary penalty imposed by the Decision. [6] at 2-5. On May 11, 2017, the Court requested supplemental briefing concerning its putative jurisdiction over the government's counterclaim. [17] at 1. Rather than providing the requested briefing, the parties filed a joint motion to dismiss the government's counterclaim, [18] at 1-2, which was granted on May 26, 2017. [20] at 1.

I.   **Background**[2]

Petra operated at 2701 East 79th Street in Chicago, and was previously qualified to participate as a retailer in the federal Supplemental Nutrition Assistance Program ("SNAP"). [13] at 2. SNAP is overseen by the Food and Nutrition Service ("FNS"). *Id.* at 1-2.

In April of 2014, FNS informed Salaymeh that it had evidence suggesting Petra was "trafficking" in SNAP benefits. *Id.* at 2; *see also* 7 C.F.R. § 271.2 (defining "trafficking" to mean, *inter alia*, the "buying, selling, stealing, or otherwise effecting an exchange of SNAP" benefits "for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone."). FNS subsequently charged Petra with trafficking SNAP benefits, and on August 5, 2014, Petra was permanently disqualified from participating in the SNAP program. [13] at 2. Neither Petra nor Salaymeh ever contested the determination that Petra had been trafficking in SNAP benefits.

Petra, during the course of its operation, also accumulated over $40,000 in tickets from the City of Chicago. *Id.* at 4. As a result of these tickets, Salaymeh

---

[2] The government, in support of its motion for summary judgment [12], filed the appropriate Rule 56.1 statement. *See* [13] at 1-5; *see also* Local Rule 56.1(a) ("With each motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 the moving party shall serve and file . . . a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law."). Petra then filed a document that is captioned "Petra Mini Mart's Cross Motion for Summary Judgment." [15] at 1-4. Without explanation, that same filing is also described as a "response . . . in opposition" to the government's summary judgment motion. *Id.* Whether Docket Entry 15 was intended to serve as a response in opposition to the government's motion or a cross-motion for summary judgment is functionally irrelevant, however, as the Court ultimately concludes that the government is entitled to summary judgment on Petra's claim as a matter of law. *See infra* at 9-10. Moreover, because Petra never filed the responsive statement required by Local Rule 56.1(b), "[a]ll material facts set forth" in the government's statement are "deemed to be admitted" for the purposes of this section of the Court's opinion.

could not "afford to stay in business," and Jaffar Karakra ("Karakra"), a former Petra employee, "want[ed] to take over." *Id.* at 3. To that end, Karakra (not Salaymeh) executed a lease with the owner of Petra's location that began to run in October of 2014. *Id.* Karakra also registered articles of incorporation for a new business entity (A&S Food Mart #1 or "A&S") on October 30, 2014, and A&S received its business registration on November 1, 2014. *Id.* Finally, Karakra sought the licenses required to operate a food or tobacco store in the City of Chicago. *Id.* Municipal authorities refused to issue these licenses until Karakra assumed financial responsibility for Petra's outstanding tickets. *Id.* at 4. Karakra agreed, and his understanding with Salaymeh was memorialized in an "affidavit" jointly executed on March 6, 2015. *Id.* The affidavit provides:

> I, Jaffar Karakra SSN . . . certifies [sic] that I did purchase the business Petra Mini Mart, Inc. 2701 E. 27th St., Chicago, IL 60649 from Mr. Ayman Salaymeh. This is also to certify that I will pay all the tickets for the City of Chicago from the purchase price as it was agreed with the City of Chicago to pay $2,600 per month for 17 months.

*Id.* at 52. That same month, Petra ceased operations, A&S received its licenses to sell tobacco and food, and A&S began operating at Petra's former location on 79th street. *Id.* at 5.

FNS informed Salaymeh in August of 2015, several months after Petra had closed, that it had obtained evidence suggesting that Salaymeh had sold Petra to a former employee, in violation of controlling federal law. *Id.* at 2; *see also* 7 U.S.C. § 2021(e)(1) ("In the event any retail food store or wholesale food concern that has been disqualified [from participation in SNAP] is sold or the ownership thereof is

3

otherwise transferred to a purchaser or transferee, the person or persons who sell or otherwise transfer ownership of the retail food store or wholesale food concern shall be subjected to a civil penalty . . . ."); 7 C.F.R. § 278.6 ("In the event any retail food store or wholesale food concern which has been disqualified is sold or the ownership thereof is otherwise transferred to a purchaser or transferee, the person or other legal entity who sells or otherwise transfers ownership of the retail food store or wholesale food concern shall be subjected to and liable for a civil money penalty.").

FNS's charge was supported by both the previously-mentioned affidavit of sale and Karakra's lease over Petra's location at 79th street, which began to run in October of 2014—six months prior to Petra's closing in March of 2015. *Id.* at 2. Based upon this evidence, FNS imposed a $44,000 transfer-of-ownership-civil-money-penalty against Salaymeh (the "TOCMP"). *Id.*

Salaymeh submitted a timely request for administrative review of the TOCMP. *Id.* at 2-3. He argued that FNS did not have any evidence that he sold Petra to Karakra. *Id.* Salaymeh additionally insisted that he had simply closed Petra in March 2015, and Karakra had opened a similar store in the same location afterwards. *Id.* at 3.

On March 24, 2016, FNS affirmed its finding that Petra was sold and upheld the $44,000 penalty triggered by the transfer. *Id.* This Decision was based upon both the affidavit of sale and Petra's leasing history. *Id.*

4

## II. Jurisdiction

Petra initiated this lawsuit under 7 U.S.C. § 2023(a)(13), which provides that if a "store, concern, or State agency feels aggrieved by such final determination, it may obtain judicial review thereof by filing a complaint against the United States in the United States court for the district in which it resides or is engaged in business . . . within thirty days after the date of delivery or service of the final notice of determination upon it, requesting the court to set aside such determination." The Decision was issued on March 24, 2016, [13] at 25, and Petra filed suit on April 22, 2016, [1], within the time period contemplated by § 2023(a)(13).

## III. Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.,* 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.,* 743 F.3d 524, 528 (7th Cir. 2014).

This Court's review of the Decision's factual and legal conclusions is *de novo*. *See McGlory v. United States,* 763 F.2d 309, 311 (7th Cir. 1985) (per curiam); *see also* 7 U.S.C. § 2023(a)(15) ("The suit in the United States district court or State court shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue . . . ."). The record before the "district court, not the record before the agency, is what counts." *McGlory,* 763 F.2d at 311. Petra bears "the burden of proving, by a preponderance of the evidence, that the agency's determination was invalid." *Fells v. United States*, 627 F.3d 1250, 1252 (7th Cir. 2010); *see also Bros. Food & Liquor, Inc. v. United States*, 626 F. Supp. 2d 875, 879 (N.D. Ill. 2009) ("Plaintiff has the burden of proving by a preponderance of the evidence on this fresh record that the administrative decision was invalid because violations did not occur.").

Should the Court conclude, after its *de novo* review of the record, that there was a violation, it must give deference to the penalty imposed by the FNS and may only overturn the imposed penalty if it is arbitrary and capricious. *See Estremera v. United States*, 442 F.3d 580, 585 (7th Cir. 2006); *Brooks v. United States,* 64 F.3d 251, 256 (7th Cir. 1995); *McGlory,* 763 F.2d at 311.

IV. **Analysis**

  A.  **Salaymeh Sold or Transferred Petra**

Persons who sell or otherwise transfer ownership of retail food stores that have been disqualified from participation in SNAP "shall be subjected to a civil penalty." 7 U.S.C. § 2021(e)(1). Petra does not dispute that in August 2014, it was

6

disqualified from participation in the SNAP program for trafficking in benefits. *See* [15] at 1 ("The government correctly notes that the sole issue for the Court's determination is whether Salaymeh sold or transferred Petra Mini Mart to Jaffar Karakra.") (internal quotation omitted). The Court accordingly turns to the question of whether Salaymeh actually sold or otherwise transferred Petra to Karakra.

The government's evidence on this issue is overwhelming. As discussed *supra*, Karakra and Salaymeh executed an affidavit explicitly commemorating the sale of Petra. [13] at 52 ("I, Jaffar Karakra SSN . . . certifies [sic] that I did purchase the business Petra Mini Mart, Inc. 2701 E. 27th St., Chicago, IL 60649 from Mr. Ayman Salaymeh."). The affidavit also identifies Salaymeh as the "seller" and Karakra as the "purchaser." *Id.* In addition to this affidavit, the record reflects that Karakra executed a lease over Petra's location that began to run in October of 2014—six months prior to Petra's closing in March of 2015. *Id.* at 2.

### B. Petra's Arguments are Unavailing

Petra attempts to evade the obvious implication of this evidence by arguing that Salaymeh did not actually "sell or otherwise transfer ownership" of Petra within the meaning of 7 U.S.C. § 2021(e)(1). Petra principally relies upon *Huggins v. United States*, 858 F. Supp. 2d 694, 700 (N.D. Miss. 2012), which concerned a store owner who was disqualified from participation in the SNAP program, dissolved his business, and then leased the business's former location to his relative. *Id.* at 699. The plaintiff's relative then operated a grocery store at the same

location. *Id.* The FNS assessed a civil monetary penalty after determining that a transfer of business ownership had occurred "based solely on the lease of the Plaintiff's building to his relative." *Id.* at 700. The court in *Huggins* noted that, aside from the lease, the evidence in the record suggested that no transfer had occurred, including: (1) evidence suggesting plaintiff had closed his grocery store's bank account; (2) a letter from the plaintiff's tax preparer stating that the plaintiff had closed his business in accordance with IRS guidelines for dissolution; (3) a letter from the town mayor personally attesting that plaintiff's grocery store had closed; (4) documentation showing the building stayed vacant for some time before the plaintiff leased it to his relative; (5) a lease agreement and a tax permit supporting the plaintiff's contention that he received monthly rent from his relative; and (6) representations by the plaintiff that upon entering into the lease agreement, he sold the store's equipment and inventory so that only the empty shell of the building remained. *Id.* at 701. The court ultimately concluded that, given the weight of this countervailing evidence, "the Plaintiff's leasing of his own empty building that had previously housed his grocery store business to his relative did not, in and of itself, constitute a 'transfer' under the statute." *Id.* at 705.

*Higgins* is readily distinguishable from the present case. The plaintiff in *Higgins* adduced a laundry list of evidence suggesting that no "transfer" had occurred. *Id.* at 701. In stark contrast, Petra has adduced no evidence at all, by virtue of its failure to respond to the government's statement of material facts as required by Local Rule 56.

8

In fact, the only piece of evidence even cited by Petra, Salaymeh's deposition testimony, actually supports the government's case. At his deposition, Salaymeh was asked: "So did he [Karakra] pay you any *other* consideration [besides paying Petra's outstanding tickets] for the premises and the lease of the business?" [15] at 3 (emphasis added). Salaymeh responded: "Absolutely not even a penny." *Id.* In this exchange, Salaymeh implicitly acknowledges that he was, in fact, paid *some* consideration in exchange for Petra. This concession comports with all the other evidence in the record, and leads inescapably to the same conclusion: Salaymeh sold Petra, a disqualified business, to Karakra, in exchange for Karakra's agreement to pay Petra's outstanding tickets.

*Estremera v. United States,* 442 F.3d 580 (7th Cir. 2006), is instructive here. In that case, the FNS had assessed a civil monetary penalty against an individual determined to have sold his business following his permanent disqualification from the food stamp program. *Id.* at 586. The FNS based this determination on various evidence of the sale, including: (1) a consent action agreement signed by the store owner to sell the store to a purchaser; (2) a bill of sale for the store; (3) a real estate closing statement confirming the sale; (4) an affidavit attesting to the sale of the store; (5) a mortgage note signed by the purchaser; (6) a lease between the store owner and the purchaser; and (7) the store owner's signed admission that she had sold the store. *See id.* The store owner later challenged the civil money penalty, contending, *inter alia,* that she had not sold ownership of the business, the sale was never completed, and the would-be purchaser had never intended to follow through

9

on the sale. *See id.* at 584. The district court, pursuant to its *de novo* review, upheld the civil monetary penalty, and the Seventh Circuit affirmed. The Seventh Circuit explained that, plaintiff's protestations to the contrary, "[a]ll of the documents offered by the parties . . . demonstrate that there was a sale." *Id.* The court additionally noted that there was "nothing in the mortgage note to indicate that the sale was not final until the note was fully paid." *Id.*

Here, as in *Estremera*, all of the evidence before the Court reflects that Salaymeh sold Petra to Karakra, in exchange for Karakra's agreement to pay certain tickets assessed by the City of Chicago. Moreover, there is "nothing in the" affidavit of sale "to indicate" that it was "not final" or was otherwise illusory. *Id.* In short, the undisputed evidence conclusively demonstrates that Salaymeh sold a disqualified business, as commemorated in the Decision, and the government is accordingly entitled to summary judgment.[3]

---

[3] For the sake of completeness, the Court notes that Petra does not contend that the amount of the TOCMP was arbitrary or capricious. *See* [15] at 1 ("The government correctly notes that the sole issue for the Court's determination is whether Salaymeh sold or transferred Petra Mini Mart to Jaffar Karakra.") (internal quotation omitted). Regardless, there is no evidence in the record before the Court to support such a finding.

## V.  Conclusion

For the foregoing reasons, the government's motion for summary judgment [12] is granted.  Civil case terminated.

Date: June 6, 2017

Entered:

_____
John Robert Blakey
United States District Judge